UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X    Docket#
UNITED STATES OF AMERICA,      :   10-cr-594(ERK)
                               :
     - versus -                :   U.S. Courthouse
                               :   Brooklyn, New York
JOSEPH YANNAI,                 :
                Defendant      :   May 11, 2011
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES SENIOR DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**          **Loretta E. Lynch, Esq.**
                                 United States Attorney

                         BY:     **Daniel A. Spector, Esq.**
                                 **Hillary Jager, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201

                                 **Audrey Stone, Esq.**
                                 Westchester County
                                 District Attorney's Office
                                 111 MLK, Jr Blvd
                                 White Plains, NY 10601

**For the Defendant:**           **Michael Schneider, Esq.**
                                 **Heidi Cesare, Esq.**
                                 **Ben Silverman, Esq.**
                                 Federal Defenders Division
                                 16 Court Street
                                 3rd Floor
                                 Brooklyn, NY 11241

**Transcription Service:**       **Transcription Plus II, Inc.**
                                 3859 Tiana Street
                                 Seaford, N.Y. 11783
                                 Lafertype@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

## Proceedings

1          THE CLERK:  <u>United States of America v. Joseph</u>

2  <u>Yannai</u>.

3          Your appearances, counsel.

4          MR. SPECTOR:  Good afternoon, your Honor.

5  Daniel Spector, Hillary Jager and Audrey Stone for the

6  government.

7          MS. JAGER:  Good afternoon, your Honor.

8          MS. STONE:  Good afternoon, Judge.

9          MR. SCHNEIDER:  Federal Defenders by Michael

10  Schneider, Heidi Cesare and Ben Silverman.

11          Good afternoon.

12          MS. CESARE:  Good afternoon, Judge.

13          MR. SILVERMAN:  Good afternoon, Judge.

14          THE COURT:  Okay.  Now that we smoked out the

15  real reason for your speedy trial motion, do you want to

16  argue your severance?

17          MR. SCHNEIDER:  Yes, Judge.  The government

18  added a count of importing an alien for the purposes of

19  prostitution or other immoral activity.

20          THE COURT:  One?  One or more?

21          MR. SCHNEIDER:  It's one count but they charge,

22  I believe eight different women.

23          THE COURT:  Oh.

24          MR. SCHNEIDER:  Up to eight.  We don't know

25  which -- how many --

3

## Proceedings

1          THE COURT:  And so he's so fortunate, he didn't

2    make it eight counts.

3          MR. SCHNEIDER:  That one, you know, maybe --

4          THE COURT:  You're getting soft, Mr. Spector.

5          MR. SCHNEIDER:  We have been preparing this

6    case for some months now and Mr. Yannai -- I was

7    preparing the case with previous counsel to meet a state

8    court prosecution under the theory that -- the

9    government's theory that he imported women to come and

10   live in his house, so that he could forcibly sexually

11   (indiscernible).

12          This new charge changes that theory and --

13          THE COURT:  Is it inconsistent with the rest of

14   it or is it --

15          MR. SCHNEIDER:  It is.

16          THE COURT:  I mean is he saying on one side

17   that they were brought for the purpose of prostitution

18   and on the other that they were essentially, what

19   defrauded into coming here?  I don't remember --

20          MR. SPECTOR:  That --

21          MR. SCHNEIDER:  -- the other counts.

22          MR. SPECTOR:  Judge, the -- well I don't want

23   to cut Mr. Schneider off.

24          THE COURT:  No, he yields to you.

25          MR. SPECTOR:  The facts, the theory, the

4

### Proceedings

1   evidence, are entirely the same.  Our theory from the

2   beginning has been it was a combination of force and

3   psychological coercion.  And that's consistent with the

4   other counts and it's consistent with this count.

5          MR. SCHNEIDER:  That raises another problem but

6   for the severance, I don't think --

7          THE COURT:  Well is that prostitute -- that

8   comes under the definition of prostitution?

9          MR. SPECTOR:  Our position is not that it is

10  prostitution.

11         THE COURT:  Well that's what they seem to be

12  suggesting.

13         MR. SCHNEIDER:  Right and that's the problem we

14  have is the statute -- you know, the hundred year old

15  statute, as we read it and as the Supreme Court

16  interpreted it, you know, a hundred years ago, requires

17  an intent that the woman engaged in prostitution or some

18  other immoral act that is similar to prostitution. And we

19  don't have that here.

20         And our concern is, look if their argument's

21  just going to be it's the same as the Mann Act charged,

22  and we have to prove that he forced these women to have

23  sex, we wouldn't have a problem.  Our problem is when it

24  gets time for you to charge the jury, under that statute,

25  we think you have to charge the prostitution theory.

5

**Proceedings**

1   That's what the statute prohibits and that's a completely

2   different case.

3          THE COURT:  Well he says he's not charging

4   that.  I don't understand.

5          MR. SCHNEIDER:  Well then --

6          THE COURT:  I mean I think the statute is vague

7   on its face but I assume that it's been narrowed by

8   judicial construction, so that it survives a vagueness

9   charge.

10          MR. SCHNEIDER:  Well it has been narrowed by

11   judicial construction to basically the facts of

12   prostitution or something very similar.

13          THE COURT:  Well he you can't prove it, he'll

14   lose.  I mean I don't understand.

15          MR. SCHNEIDER:  Well --

16          THE COURT:  I won't give it to the jury.

17          MR. SCHNEIDER:  Our real concern is we don't

18   want a theory going to the jury whereby the government

19   now doesn't have to prove that Mr. Yannai forced these

20   women.

21          THE COURT:  He just said he is not -- well he

22   said he's not going to offer that.  I don't know, what am

23   I supposed to do now?  I take his word for it.

24          MS. CESARE:  We think you should sever the

25   count.  It's a different case.

6

**Proceedings**

1          THE COURT:  Well I don't know what immoral

2    purposes is.  I mean I don't --

3          MS. CESARE:  It's been narrowed to mean

4    prostitution.

5          MR. SPECTOR:  Judge, if I may respond?  There's

6    a Fifth Circuit case on this which was cited in our

7    papers which in our view directly addresses this

8    question.  And the issue is the conduct must be -- can be

9    prostitution which we're not alleging here.  It can also

10   be other sexual conduct involving exploitation or

11   coercion.  That's what happened in the Fifth Circuit case

12   in Clarke and that's what we will allege happened here.

13         THE COURT:  Well, if that's what he alleges,

14   it's not much different from what he is charging already.

15         MR. SCHNEIDER:  Well, I --

16         THE COURT:  I mean I am going to -- this is

17   your bill of particulars.

18         MR. SCHNEIDER:  I understand, Judge.  And we

19   went through this in front of Judge Orenstein in the

20   government's made the same representations.  To be clear,

21   our concern is we don't want to have to meet a jury

22   charge that would allow the jury to convict Mr. Yannai

23   because the women consented to have sex with him, as he

24   was paying for their room and board or was giving them

25   other objects.  I think --

7

## Proceedings

1          THE COURT:  I don't know, what did he just say?

2     That's what I would charge, assuming that's what the

3     evidence showed.  He read from the --

4          MR. SPECTOR:  Yeah, it's exploitation and

5     coercion.  And the Court defines sexual exploitation as

6     to use a person unjustly for one's advantage in a manner

7     associated with or related to sex.  And here we'll prove

8     that because he used a combination of in some instance

9     physical force, in other instances exploitation and

10    coercion; psychological coercion and other forms of

11    coercion.

12         THE COURT:  That's it.  I'm not going to charge

13    the jury anything else.

14         MR. SCHNEIDER:  Okay.

15         THE COURT:  I mean, as I read your letter, you

16    withdrew the Speedy Trial Act claim but I don't think it

17    had any great merit, in any event.  I mean by my count,

18    the trial is going to -- the trial, meaning the jury is

19    going to be sworn and the case is going to begin on --

20    twenty-seven days after he was arraigned on this charge

21    and probably even longer from the date of the indictment.

22    When was the date of the indictment?

23         MR. SPECTOR:  I believe it was more than thirty

24    days before.  I don't have the exact date.

25         THE COURT:  So it's even more than thirty days.

8

**Proceedings**

1   The only thing that happened in the interim is that you

2   had to divert from your preparation was a day for jury

3   selection.  So I don't see that really significant,

4   particularly in a case which has already been delayed

5   this long.

6           THE CLERK:  The superseding indictment was

7   filed on April 21.

8           THE COURT:  Okay.

9           MR. SPECTOR:  Judge, I think we've actually

10  resolved the next issue which had to do with an exchange

11  of 3500 material and 26.2 material.  I'll let the defense

12  put on the record they informed me that they do not plan

13  to call witnesses A, K, G, L or the defendant's mother if

14  that's the case.

15          MR. SCHNEIDER:  The defendant's wife.

16          MR. SPECTOR:  The defendant's wife, I

17  apologize.

18          MR. SCHNEIDER:  We're not going to call his

19  mother either.

20          MR. SPECTOR:  If that is, in fact, the case

21  we're prepared to provide our 3500 material either

22  tonight or tomorrow morning.

23          THE COURT:  Okay.  Good.

24          MR. SCHNEIDER:  That is the case.  And for the

25  record, we had no 3500 or 26.2 material for one of the

9

### Proceedings

1  complaining witnesses but we don't intend to call either

2  at this point.

3           MR. SPECTOR:  I should say, I'm sorry this --

4  my understanding is that the two victims are under

5  defense subpoena.  One of them has an attorney who we've

6  informed the defense about, so I assume they're going to

7  notify those witnesses that they're not going to be

8  subpoenaed by the defense -- going to be called by the

9  defense.

10          MS. CESARE:  Well it's difficult for us to --

11  we can contact Mr. Fodeman to release his witness but the

12  other witness is difficult for us to contact, so perhaps

13  the government could communicate to her that we release

14  her from that subpoena.

15          THE COURT:  Okay.

16          MS. CESARE:  We don't have easy access to that

17  witness.

18          THE COURT:  Give him the subpoena and ask him

19  to serve it.

20          MR. SCHNEIDER:  No, the subpoena's been served.

21          THE COURT:  Oh.

22          MR. SCHNEIDER:  They're asking about whether

23  we'll release the --

24          THE CLERK:  You withdraw.

25          MR. SCHNEIDER:  And we will but we can't find

10

### Proceedings

1  them to release them.

2          THE COURT:  Oh, oh.  I see.  Well, he could --

3  he'll be more than happy to arrange for that.

4          MR. SPECTOR:  Fine, Judge.

5          MS. CESARE:  What time tonight do you

6  anticipate releasing that material?

7          MR. SPECTOR:  It depends on our paralegal.  If

8  we're ready tonight, we'll let you know as soon as it's

9  ready.  Otherwise, first thing tomorrow morning.

10         MR. SCHNEIDER:  Is it going to be electronic

11  or --

12         MR. SPECTOR:  No, it's not going to be

13  electronic.

14         THE COURT:  When the sun sets.

15         MR. SCHNEIDER:  We do have an outstanding

16  request for Brady material.  It's our view that any

17  statements taken by women who lived in a house --

18         THE COURT:  Taken by or from?

19         MR. SCHNEIDER:  From; sorry, taken from -- made

20  by these women, especially any that indicate that they

21  didn't notice any coercion or any forcible sex acts

22  taking place in the house because most -- there is rarely

23  just one woman living in the house.  There's usually more

24  than one.  That that is Brady material.  It exculpates

25  our client.

11

**Proceedings**

1          MR. SPECTOR:  Judge, they're getting all of

2   that material anyway.  The 3500 has every ROI from the

3   case agents.  So they'll have all those interviews.

4          THE COURT:  Okay.

5          MR. SCHNEIDER:  We also think that any

6   documents in the government's control that include e-mail

7   messages from any of the women to their family, if the

8   government has those documents and they indicates that

9   there was no coercion or force, those would be Brady

10   material, as well.

11          MR. SPECTOR:  Well --

12          THE COURT:  What do you mean?  You have to be

13   more specific.

14          MR. SCHNEIDER:  We believe that as for

15   government perhaps not a witness but a woman who they've

16   interviewed, if they somehow have in their possession e-

17   mail messages from that woman to somebody else indicating

18   here I am in New York.  I'm having a great time.  Joseph

19   is a good guy.  Tonight we're going to the theater.  That

20   would be Brady material.

21          MR. SPECTOR:  Judge, I think we're really

22   getting far, far beyond any line of Brady.  We've already

23   been incredibly generous frankly in what we've given them

24   and I think we need to make a distinction between the

25   witnesses who are testifying, who we're going to be

12

**Proceedings**

1  relying on in court.  Obviously we'll give over all those

2  documents described including e-mails --

3          THE COURT:  I don't know why --

4          MR. SPECTOR:  -- that's 3500 material.

5          THE COURT:  -- you have to play it so close to

6  the vest.  There's a separate -- just because something

7  may be Brady material or helpful to the defense, I mean

8  the reality is that -- I mean the law is that Brady

9  material is evidence that could more likely than not,

10 result in a different outcome.  But, you know, first of

11 all you roll the dice when you rely on that but I don't

12 know why you have to play it so close to the vest.  I

13 started to say the fact that it may be Brady material

14 doesn't mean it's admissible.

15         MR. SPECTOR:  Judge, if I may just clarify

16 that.  With all due respect, we're not playing anything

17 close to the best.  We are giving them everything as to

18 every testifying witness.

19         THE COURT:  I know but what he asked for is

20 reasonable whether it's admissible is a separate story.

21         MR. SPECTOR:  Well, it's not a question of

22 admissibility, Judge.  We're also giving them all the

23 statements from every woman, whether they're testifying

24 or not.  But what is completely irrelevant is a woman who

25 he had a consensual sexual relationship with who lived in

13

**Proceedings**

1   his home who we're not seeking to rely upon, her e-mails

2   are totally irrelevant.  That's no more relevant than the

3   fact that he had sex with his prom date in high school.

4   That's not part of the case.

5            THE COURT:  I'm not arguing admissibility now.

6   I can worry about that at the time but I don't see why

7   you can't give it to him.

8            MR. SPECTOR:  Judge, that puts a tremendous

9   burden on us to go back and look at e-mails that we

10  haven't focused on because we're not calling those

11  witnesses.  I don't want to be responsible for making a

12  representation that the government has turned over a

13  universe of documents that we're not focused on.  We're

14  giving him the statements from those witnesses.  I think

15  that's more than sufficient.

16           MR. SCHNEIDER:  But it's not a concern that --

17  I understand the government's argument that because some

18  woman had consensual sex doesn't mean that others weren't

19  forced, although I think it's more relevant than they

20  concede.  Our problem is those women are witnesses to

21  what the government says is a coercive environment and

22  abuse of the other women in the house at the same time.

23           THE COURT:  But they're not calling them as

24  witnesses.

25           MR. SCHNEIDER:  Right.  But if there are

14

## Proceedings

1   statements saying -- of living in the house with one of

2   the complaining witnesses --

3            THE COURT:  Look, this strikes me as being

4   analogous to cases where there has been eyewitness

5   identifications by some people and then other witnesses

6   couldn't make an identification and I'm reasonably

7   certain that the evidence that other people are unable to

8   make identification was held to be -- you know, you

9   should turn it over.  I'm not saying I'm going to admit

10  it.

11           MR. SPECTOR:  Judge, just to be clear, to the

12  extent we have information where victim -- let's say

13  there's victim number one and --

14           THE COURT:  You must have gone through all of

15  this stuff --

16           MR. SPECTOR:  Judge.

17           THE COURT:  -- in order to determine what to

18  charge and what not to charge.

19           MR. SPECTOR:  If there's anything that could be

20  construed as Giglio, anything that would contradict one

21  of the witnesses we're calling to testify, we're turning

22  that over.  But there are many times where there are

23  victims who are at the home who are not contemporaneous

24  with any of the victims we're relying upon.

25           The fact that those victims sent e-mails to

15

**Proceedings**

1   various people --

2         THE COURT:  So that would be -- you know, from

3   what you're describing, I wouldn't admit it but that I --

4   you know, I try to tell you that the definition of Brady

5   material does -- I mean, I am reasonably certain because

6   I think for other purposes I just happen to be reading it

7   that the fact that something is Brady material doesn't

8   mean it has to be admissible.

9         MR. SPECTOR:  Judge, frankly I don't even know

10  that we have any of those e-mails.

11        THE COURT:  Well, you can't turn over anything

12  that you don't have.

13        MR. SPECTOR:  I don't want to be responsible

14  for undertaking a project now where we have to go and

15  review everything again.

16        THE COURT:  Well I don't know.  Write me a

17  letter of how big a deal this is.  You know, I would

18  assume that he would have gone through it anyway.

19        MR. SPECTOR:  Not as to witnesses that we're

20  not focusing on, Judge.

21        THE COURT:  Well you would have gone through

22  it, it seems to me, to determine who were going to be the

23  victims that you were going to charge.

24        MR. SPECTOR:  We're talking about victims that

25  we're not relying upon.

16

**Proceedings**

1          THE COURT:  You know, I understand that.  What

2  I am saying is it seems to me you would have gone through

3  that in preparing the case to see whether or not there

4  were other victims that you might not have been aware of.

5          MR. SPECTOR:  Certainly.

6          THE COURT:  And so you would have gone through

7  those e-mails in any event.  And I don't know, you know,

8  I've read -- there was a story in the Times about the

9  digitizing of documentary materials which indicates that

10 it's not such a terrible ordeal to do a document search.

11         MR. SPECTOR:  Well, it's -- I think -- Judge,

12 let me say this.  We'll attempt to undertake a review.

13         THE COURT:  Good.

14         MR. SPECTOR:  To the extent that there's

15 anything that is Giglio as to the ones who were

16 testifying, that's getting turned over.  To the extent

17 that there is not, if we think that there's an issue,

18 we'll come back to the Court.  I don't know that there

19 even exists this other universe.

20         THE COURT:  I know you don't know.

21         MR. SPECTOR:  I just -- I'm a little

22 uncomfortable to make a representation about that.

23         THE COURT:  I understand.  So you've got time.

24 You told me months ago that you were ready for trial.

25         MR. SPECTOR:  We are ready for trial.

17

**Proceedings**

1    THE COURT:  Yes, but in the meantime you filed

2  a superseding indictment and did a lot of other things

3  from the time you told me you were ready to go that

4  second.  Okay.

5    MR. SPECTOR:  I think the next issue, Judge, is

6  our application to have the victims referred to by first

7  name only.

8    MS. JAGER:  Your Honor, our papers set forth

9  our position which is that the government respectfully

10  requests that the victims be referred to by their first

11  name, is with respect to the defendant's response to our

12  motion.

13    MR. SCHNEIDER:  We said no.  Our concern is not

14  only the infringement of Mr. Yannai's confrontation

15  rights.  It's really our concern is the infringement of

16  his Fifth Amendment right to due process, to be presumed

17  innocent.

18    We're not going to ask the witnesses where

19  exactly they live, where exactly they work, where exactly

20  they go to school.  We're not interested in that.

21    THE COURT:  So what is your concern, the fact

22  that they don't give their second name, the jury will

23  draw some inference that --

24    MR. SCHNEIDER:  Yes, the jury will draw some

25  inference that the Court has made a conclusion that these

18

**Proceedings**

1   women are victims and thereby their last names shouldn't

2   be used.  And to be honest --

3              THE COURT:  Well why don't we give them

4   pseudonyms?

5              MR. SCHNEIDER:  Look, if it could work and the

6   jury wouldn't know that they were being treated

7   specially, it wouldn't be a problem.

8              THE COURT:  Well when you pick --

9              MR. SCHNEIDER:  I don't understand the

10   government's concern here.  We know their names.  There's

11   no concern, safety concern from our client or us knowing

12   their name.  They --

13              THE COURT:  And newspapers don't publish the

14   names.

15              MR. SCHNEIDER:  And newspapers don't publish

16   the names.  So I don't understand the government's

17   concern at all.  And the other problem is I certainly

18   don't want to be in a position of cross-examining a young

19   woman and calling her by her first name.  I think it's

20   inappropriate.

21              THE COURT:  I wasn't talking about that.  I had

22   suggested a pseudonym.

23              MR. SCHNEIDER:  I understand but that was --

24              THE COURT:  It could be something more

25   imaginative than Roe and Doe.

19

## Proceedings

1          MR. SCHNEIDER:  Right.  We could do Ms. Black

2    and Ms. Pink and Ms. Brown but it's not --

3          THE COURT:  No, go to the telephone book and

4    pick out names, whatever you like.  If that's what your

5    concern is.  I'm trying to address your concern --

6          MR. SCHNEIDER:  That is my concern.

7          THE COURT:  If you just want to make it tough

8    for the government, that's another story but --

9          MR. SCHNEIDER:  I don't.  I just don't

10   understand the government's concern.  It's not -- we'll

11   call them by their names.  The press won't report it, we

12   know that.  I don't understand what the problem is.  We

13   already know their names.

14         MS. JAGER:  Your Honor, the concern is their

15   privacy.  They are women who are going to be testifying

16   about you know sexual acts that they --

17         THE COURT:  But that happens most of the time,

18   I think in most cases of this genre, the victims give

19   their names in open court.

20         MS. JAGER:  Sometimes the Court makes

21   accommodations for them in order to either use a

22   pseudonym as your Honor has suggested or to just use a

23   first name or to use initials.

24         THE COURT:  Well, we're not going to use the

25   first name but I am willing to use a pseudonym.  And I'll

20

**Proceedings**

1  take a -- give me some cases that say that I can do this.

2  MR. SPECTOR:  Judge?

3  MS. JAGER:  The only problem with using the

4  pseudonym is some of the women overlapped with each other

5  and they'll be referring to one another.  And so it would

6  be confusing for them to have to use a name for somebody

7  that they --

8  THE COURT:  Well look, the problem is --

9  MS. JAGER:  -- don't know.

10  THE COURT:  -- that at some point --

11  MS. JAGER:  Another suggestion --

12  THE COURT:  Look, nobody is more sensitive to

13  privacy interests than I am.  I mean I have written

14  opinion allowing people to file civil suits under their

15  -- using initials.  I've written an opinion reversing a

16  magistrate on this automatic notion of giving out Social

17  Security numbers at depositions.  I don't believe that

18  people should be forced.  I think the -- having all this

19  stuff online really forces people to give up privacy

20  rights that -- in order to vindicate whatever legal

21  rights that they have.

22  But on the other hand, I think look, this is a

23  criminal case and generally, you cut it in favor of the

24  defendant's right to a fair trial.  Now if you've got

25  cases, I'll look at them but my inclination right now is

21

## Proceedings

1   I have a vague recollection of a case that Justice Fordes

2   (ph.) wrote.  I don't know -- that --

3            MS. JAGER:  May we just have a moment,

4   your Honor?

5            THE COURT:  Maybe it dealt with addresses.

6   That's a different story.

7            MR. SPECTOR:  That's fine, Judge.  We'll confer

8   and perhaps I will withdraw the application.

9            THE COURT:  Okay.

10            MR. SCHNEIDER:  The next --

11            MR. SPECTOR:  I think the two next issues

12   actually have been resolved.  We had made a motion to

13   preclude use of certain photographs.  The defense has

14   represented they're not seeking to use those and we had

15   made a motion to preclude reference to the victim's

16   sexual histories as to third-parties and the defense has

17   represented they're not seeking that information.

18            MR. SCHNEIDER:  That is correct, although there

19   is one issue that has arisen since we responded to that.

20   We provided notice that we intend to elicit testimony

21   about the complaining witnesses sexual conduct with Mr.

22   Yannai.  There may have been -- I don't know exactly who

23   the government's witnesses are going to be.  There may

24   have been sexual contact between the witnesses, between

25   the women.  And that may become relevant.  But other than

22

**Proceedings**

1    that, we have no --

2          THE COURT:  On the basis of that generality, I

3    can't do anything.  When the time comes, I'll rule on it.

4          MR. SCHNEIDER:  Okay.

5          MR. SPECTOR:  So I think the next issue is our

6    404(b) application.

7          THE COURT:  What is that?

8          MR. SPECTOR:  We had --

9          THE COURT:  I don't like in limine rulings.  I

10   don't like to make rulings when I don't have a feel for

11   the case.  And most of the time, it's not necessary to

12   refer to it in opening statements but let me hear what

13   you want to --

14         MR. SPECTOR:  Certainly, Judge.  We've learned

15   that in 1992, the defendant engaged in virtually

16   identical conduct with another victim.  This is a woman

17   who was nineteen years old that the defendant hired to

18   live in his home and work for him.  And who she reports,

19   suffered exactly -- exactly the same type of situation.

20   He pressured her for sex.  Repeatedly castigated her.

21   She reported that he groped her breasts and groped her

22   buttocks and that she was afraid to tell him that she was

23   refusing his sexual offers.

24         Although it is old, we think under the

25   circumstances it's critical evidence for the government

23

## Proceedings

1  for a number of reasons.  First of all, as I think has

2  already been made clear, the defendant apparently is

3  going to concede that much of the sexual that the victims

4  are going to describe took place.  He's going to argue

5  that it was consensual.

6         And particularly under those circumstances,

7  where the issue is the defendant's mens rea, the Courts

8  have held the 404(b) evidence particularly appropriate to

9  show the defendant's intent.  In addition, to the

10  extent --

11         THE COURT:  Well, where the argument is that

12  it's consensual, whose mens rea is at issue?

13         MR. SPECTOR:  Well, it's the defendant's intent

14  to commit the crimes.  I mean it would also be the

15  victim.

16         THE COURT:  But whether it's consensual depends

17  on the victim's state of mind.

18         MR. SPECTOR:  Well I think it's both, frankly,

19  but --

20         THE COURT:  Well, okay.

21         MR. SPECTOR:  But I think it -- however you

22  slice it, this is relevant to that determination because

23  it shows that this is a situation where it goes to show

24  that the defendant did not intend to have consensual

25  sexual conduct but rather intended to have it not be

24

## Proceedings

1  consensual.

2          In addition, it's classic modus operandi

3  evidence.  It's striking actually how identical the

4  conduct is.  There's a recent Second Circuit case that we

5  cited Curley (ph.), I think it just came out a couple of

6  weeks ago, that held that even where evidence is old,

7  actually even older than in this instance, I think in

8  Curley it was fifteen years prior to the charged conduct,

9  that the fact that it was old was not a bar to its

10  admission.

11          And I think that the -- where you're talking

12  about the context of sexual assaults, the age of the

13  prior incident really should not be a bar and there's a

14  line of cases under Rule 413 to that effect that we've

15  cited in our papers.  While we're not seeking its

16  admission under Rule 413, I think that that --

17          THE COURT:  Well what are you seeking it under?

18          MR. SPECTOR:  Under 404(b).

19          THE COURT:  As modus operandi.

20          MR. SPECTOR:  As intent showing lack of

21  accident, mistake, and modus operandi.

22          THE COURT:  And --

23          MR. SPECTOR:  Judge, one other point.

24          THE COURT:  I have intent to deal with Rule 412

25  or 413 but isn't prior similar -- doesn't that create an

**Proceedings**

1    exception for prior similar acts in sexual assault cases?

2              MR. SPECTOR:  It does, your Honor.  It's a bit

3    of a technical exception here because 413 defines -- if I

4    can just have one moment to find the note, it defines

5    t6hat the framework for 413 is an offensive sexual

6    assault and the groping that he committed against this

7    victim nineteen years ago does not technically fall

8    within the definition.  So we're not seeking it under

9    Rule 413.

10             But nonetheless, I think the congressional

11   intent --

12             THE COURT:  There is in 413 a definition of

13   sexual assault, is that it or is the Court -- has the

14   Court's interpreted that?

15             MR. SPECTOR:  I believe it's within the

16   statute, your Honor.

17             THE COURT:  Okay.

18             MR. SPECTOR:  In any event, I --

19             THE COURT:  I'm sure if you say so, I can rely

20   on it.

21             MR. SPECTOR:  The -- nonetheless, congressional

22   intent in passing 413, I think is instructive here in the

23   way that courts have interpreted the rule in that

24   particularly in sexual assault cases where defendants

25   engage in this type of behavior even over a long period

26

**Proceedings**

1   of time in the past, it's still quite relevant and

2   instructive as to their mental state with respect to the

3   charged crime.

4          MS. CESARE:  May I ask a question on a proffer

5   level?  Is there an allegation that Mr. Yannai had sexual

6   relations with this woman?

7          MR. SPECTOR:  No.

8          MS. CESARE:  That they had sex?

9          MR. SPECTOR:  No, it's groping.

10          MR. SCHNEIDER:  Right.

11          MR. SPECTOR:  It's what all of our witnesses

12   are going to testify to, as well.

13          MR. SCHNEIDER:  Section 413 defines sexual

14   assault as certainly more than groping.  It refers you to

15   a statute.

16          MR. SPECTOR:  I apologize.  There's just one

17   other thing I need to clarify about the --

18          MR. SCHNEIDER:  Okay.

19          THE COURT:  I'm going to deal with this at

20   trial.  I'm not going to make an in limine ruling.  You

21   don't have to get into it in your opening statement.  I

22   want to get -- I need to get a grasp of the trial and the

23   case that I don't have in an in limine.  I hate these

24   motions because of the reason that I just don't have a

25   feel for the case.  I can't make a judgment.  I mean, one

27

### Proceedings

1   of the judgments that I make is based on, you know, the

2   nature of the case.  How much -- to what extent there's

3   prejudice, to what extent the government really needs it.

4   Of course when I was in your shoes, I'd argue with

5   Judge Weinstein all the time about that issue.  He's

6   always say, what do you need it for?  So,  I can't make

7   that judgment in this --

8            MR. SPECTOR:  We won't open on it, Judge.

9            THE COURT:  -- in a vacuum.

10            MR. SPECTOR:  I think that's all of our --

11   that's the entirety of our motion.

12            MR. SCHNEIDER:  Well, we have a couple of

13   issues.  The first is that there is a -- and this may be

14   the same class of objection you want to deal with later

15   but there's an incident where one of the named victims

16   traveled with Mr. Yannai to Michigan and during that trip

17   -- the government alleges that Mr. Yannai sexually

18   assaulted the named complainant in a hotel room in

19   Michigan, I believe.

20            The facts of that encounter are that Mr. Yannai

21   also had sex with a sixteen-year-old girl, which is not a

22   crime.  A sixteen-year-old can consent in Michigan.  And

23   it was our concern that any evidence or testimony

24   concerning that encounter between Mr. Yannai and a

25   sixteen-year-old girl would be so prejudicial that it

28

**Proceedings**

1    would need to be excluded from evidence.

2              The government has responded and said they

3    don't intend to elicit that evidence.  So I think we can

4    leave it at that for now.

5              The other issue is that Mr. Yannai --

6              MS. JAGER:  Just to be clear though, are you

7    moving on to your second issue in your motion?

8              MR. SCHNEIDER:  Yeah.

9              MS. JAGER:  I just wanted to be clear that we

10   agreed we're not going to go into the age or the presence

11   of any third party at all, but to the extent that the

12   defense opens the door to that on cross, we think it's

13   important that her age is revealed, so that there's not a

14   distorted picture of what happened that night.

15             THE COURT:  Tell him what you mean by opening

16   the door and then we'll deal with it at trial.

17             MS. JAGER:  Well, we plan to elicit testimony

18   between the defendant and the identified witness Dias

19   (ph.).  There will be no mention of any third party being

20   present for that encounter.  To the extent they ask

21   whether or not somebody else was there, anybody else was

22   in the room or anybody else participated, it would be our

23   position that that would open the door to tell the full

24   story that would include the age of the third party who

25   was present, not giving he name -- I mean, excuse me, not

29

**Proceedings**

1  giving her age but give a distorted picture of what

2  happened and would suggest perhaps that there were three

3  consenting adults.  But we agree, we're not going to

4  mention her age or mention her presence.

5        MR. SCHNEIDER:  I think we should -- I'm sorry,

6  I think we should address this closer to the time of

7  trial.  Maybe we need a -- we might think it's relevant

8  to ask if thee was another person present.  We wouldn't

9  think that that opens the door but we would ask the Court

10  before we ask that.

11        THE COURT:  It doesn't strike me that that

12  would open the door but again, I just don't want to

13  decide this in a vacuum.

14        MR. SCHNEIDER:  The last issue, the government

15  has provided us in their exhibit list hundreds or

16  thousands of pages related to an au pair questionnaire

17  that Mr. Yannai was sending out to women.  We have over

18  -- the government's file is over 6,000 of these

19  questionnaires.  They're related --

20        THE COURT:  That was of the 9,000 documents,

21  this was --

22        MR. SCHNEIDER:  Yes, this was many of them --

23        MR. SPECTOR:  Most of them.

24        THE COURT:  It was easy for you.  You didn't

25  take a --

30

**Proceedings**

1        MR. SCHNEIDER:  We had to cull each of them.

2   Anyway, this was research for a book that Mr. Yannai was

3   researching. He has published other books in the past.

4   We don't think it's relevant to any issue at trial.  We

5   think that it would be confusing to the jury.

6        The government apparently intends to argue that

7   this was evidence that Mr. Yannai was creating a list of

8   future women he could abuse.  If that's their argument, I

9   think it runs afoul of 404(b) as an other act unrelated

10  to these acts.  And it's especially so --

11       THE COURT:  Well, it would be part of the same

12  common scheme or plan but again I don't want to have to

13  rule on this now unless it's somehow critical.

14       MR. SCHNEIDER:  No, the only issue I would

15  raise is that none of the women that they're going to

16  call were contacted in this way.  None of them got this

17  questionnaire.  So --

18       THE COURT:  Oh, none of them got this

19  questionnaire.

20       MR. SCHNEIDER:  No, he contacted them through

21  the internet.

22       MS. JAGER:  Your Honor, it is the government's

23  position we'd like to be able to open on this evidence.

24  This isn't -- our theory is not that the defendant was

25  using this necessarily to create a list of future

31

**Proceedings**

victims.  The way our -- as explained in our papers, he's

using this as -- the au pair questionnaire as this

research to learn about women who are interested in

coming to the United States as au pairs.  Our position is

not that he was going to write a book and the defense can

argue otherwise but that he was using this au pair to

gather --

THE COURT:  No, they say he was going to write

a book.

MS. JAGER:  Right.  And they can argue that and

it will go to the weight of the evidence, not the

admissibility of the evidence.  And it's our position

that it goes to his intent, to his planning, to his

scheme.  He's using the same au pair websites to contact

his actual -- or our victims as he was using to send the

questionnaire to.  When he then poses as the previous

employer, he asks very specific -- excuse me, as the

previous employee, he uses very similar questions and

asking them about themselves.

THE COURT:  Did anybody respond to these that

you just -- that you want to offer?

MS. JAGER:  Hundreds of women.  And it was

based on those answers, it's our position, that he was

able to gain information about the types of women who

took these jobs, with the things they looked for in

32

**Proceedings**

1  employers, whether or not they had families, whether or

2  not they had support networks and learning what types of

3  women would potentially be potential victims for him.

4          And he catalogued all of this information in a

5  very extensive Excel spreadsheet.  And it's our position

6  that this is very relevant, critical evidence to the

7  government.

8          MR. SCHNEIDER:  I just note that none of their

9  complaining witnesses who they intend to call as a

10  witness was sent a questionnaire.  None of them were

11  contacted in this way.  So they're analogizing -- and in

12  fact, most of the women who they call victims were

13  involved with sending out these questionnaires and

14  collating these answers.  That's some of the work they

15  were doing.

16          It's not particularly relevant except in a sort

17  of illegal 404(b) way for them to argue like look and

18  look, he was going to do it to all these women, too.  I

19  would concede the relevance if he had sent this

20  questionnaire to some of their named complainants but he

21  hadn't.

22          THE COURT:  Well, I mean there could be a

23  stipulation that there was -- that he didn't -- I forget,

24  he did or did not have subsequent contact with women who

25  filled out this questionnaire?

33

**Proceedings**

1      MR. SCHNEIDER:  I can't answer that.  Not that

2  we're aware of.  I mean he -- they were collating the

3  information.  I'm not aware of him contacting any of them

4  but I haven't discussed that with him and I don't have

5  any of the e-mails the government would have.

6      THE COURT:  Well, if that's your concern, you

7  could come in with a stipulation that there's no evidence

8  that he ever contacted any of the people who got these

9  questionnaires.

10      MR. SPECTOR:  I don't know that that's true,

11  Judge.  I think I see --

12      THE COURT:  Well, you know I am -- I only know

13  what I know.

14      MR. SPECTOR:  As to -- if his point is that the

15  -- I'm sorry.  If the defense point is that particular

16  victims didn't fill out the questionnaire, he can cross-

17  examine the particular victims as to that issue.  But

18  this is critical evidence as to the defendant's intent.

19  He's honing his craft so-to-speak in that he's

20  determining the types of victims based on response of --

21      THE COURT:  Well, first find that out.  I don't

22  have to decide this today.  Find out if any of these

23  people, he actually contacted them.

24      MR. SPECTOR:  Well I mean --

25      THE COURT:  I mean you don't know.

34

**Proceedings**

1          MR. SPECTOR:  He definitely contacted them in

2    that there were e-mail exchanges where they filled out

3    the questionnaires.  That was part of the contact.

4          THE COURT:  Yes, but after they filled out the

5    questionnaires, did he ever get in touch with them again?

6          MS. JAGER:  We haven't undertaken calling over

7    hundreds and hundreds of women to determine whether or

8    not he followed-up with any or all of them.  As

9    Mr. Spector pointed out, the defense is free to question

10   the victims and the witnesses about whether or not they

11   were contacted this way.

12         THE COURT:  Well how does it hurt you to

13   stipulate that there's no evidence that he contacted any

14   of the people who got this question -- the questionnaires

15   that you want to offer?

16         MR. SPECTOR:  Well, we'd have to determine

17   whether that's true or not.

18         THE COURT:  Well, you don't have to determine

19   whether it's true.  You could stipulate to something even

20   if it's not true.  But I mean I wouldn't report you.

21         I'm just trying to figure out practical ways to

22   deal with this problem.

23         MR. SPECTOR:  Can we just have a moment, Judge?

24         (Counsel and client confer)

25         THE COURT:  Anyway, it wouldn't be not true if

35

### Proceedings

1   you don't know.  You're just stipulating that there's no

2   evidence which would be true.

3          MR. SPECTOR:  We'll look into it.  If we can

4   confirm that, we'll agree to the stipulation.

5          THE COURT:  Okay.

6          MR. SCHNEIDER:  That's the last issue, although

7   it is our position that the au pair questionnaires are

8   irrelevant and prejudicial.  But the government's

9   argument --

10         THE COURT:  I don't know if they're --

11         MR. SCHNEIDER:  -- is the illegal 404(b)

12  argument.

13         THE COURT:  You know the definition of

14  relevance in the Federal Rules of Evidence is extremely

15  broad, whether their relevance is outweighed by the

16  prejudicial effect is another story.

17         MR. SPECTOR:  I've been asked about the length

18  of the trial.  We told the jury three weeks which I think

19  is an outside estimate.  We're hoping it will be done in

20  two.  It's a little hard to predict because we don't know

21  how long the cross-examinations are going to go.

22         THE COURT:  All right.  I may have to take a

23  break in the trial for a couple of days because of the

24  Second Circuit judicial conference if it goes beyond --

25             (Pause.)

36

**Proceedings**

1          MR. SPECTOR:  I'm sorry?

2          THE CLERK:  The first full week in June is

3    problematic.

4          MR. SPECTOR:  That's the week of June 4 --

5          THE CLERK:  June 6.  Just to make sure that you

6    all understand that the magistrate who was selecting the

7    jury, the clerk called me and I hope they made it

8    perfectly clear since May 30 is a federal holiday, we

9    will not be sitting the previous Friday because that's

10   normally not our day to sit on trial.

11         MR. SCHNEIDER:  Yes.

12         THE CLERK:  We will make up the Monday trial

13   date on Friday, June 3.  So we're sitting that day for

14   trial.

15         MS. JAGER:  Judge Pollak did make that clear.

16         MR. SCHNEIDER:  If the government intends to

17   open on the au pair questionnaires, we would like to know

18   that ahead of time, so we can address it.

19         THE COURT:  Well, we've just said that he's

20   going to first look into see --

21         MR. SCHNEIDER:  I understand.  I understand.

22   The other issue is we have eight identified complaining

23   witnesses.  We would like the government to tell us which

24   ones are going to testify so that we don't have to waste

25   time preparing for ones that aren't going to testify and

37

## Proceedings

1   based on their papers, it appears they're not going to

2   call all of them.

3            MR. SPECTOR:  It's a decision that we'll make

4   during the course of the trial.

5            MS. CESARE:  Are there any witnesses they've

6   decided now that they're not going to call?

7            MR. SPECTOR:  I just don't think it's

8   appropriate for us to be put in a position of having to

9   commit to who we're calling and who we're not calling.

10           MR. SCHNEIDER:  We're just asking that they

11  tell us if they're definitely going to call somebody.

12           THE COURT:  Well forget about who they're not

13  calling.  You could commit to who you're calling.

14           MR. SPECTOR:  No, there's no one who we have

15  categorically eliminated.

16           THE COURT:  I know but there's others that

17  you've categorically decided to call.

18           MS. JAGER:  But then that would put everyone --

19           MS. CESARE:  Who are you definitely calling?

20           THE COURT:  That way there's no prejudice if

21  you don't call them, you don't call them.

22           MR. SPECTOR:  I'm not comfortable with making

23  that representation now, Judge, I'm sorry.

24           THE COURT:  You're not comfortable?  What does

25  that mean?

38

### Proceedings

1      MR. SPECTOR:  I don't want to be boxed into a

2  position of promising we are or are not going to call

3  certain witnesses.

4      THE COURT:  What do you mean boxed in?  What's

5  going to happen to you if you say you're calling X and

6  you don't call X?  What do you think is going to happen?

7      MR. SPECTOR:  Okay.  I think the only one in

8  serious question is witness A.K.  That's the only witness

9  who we have serious doubts about calling.

10      THE COURT:  Okay.

11      MR. SPECTOR:  Again, with the caveat we may

12  call her.

13      THE COURT:  With the caveat you may call her.

14  I won't hold you in contempt.

15      MR. SPECTOR:  Just one other housekeeping

16  matter, actually two.  Can we just get a little

17  clarification on what happens on the week of June 6 if

18  we're still going?

19      THE COURT:  Well, we're going to work on June

20  6.  If necessary, I might work on June 7 because I -- you

21  know, the Second Circuit Judicial Conference is so short

22  and so far away that if I just went for the Second

23  Circuit Judicial Conference alone, it would be one full

24  day and the other two days would be traveling five hours

25  to Lake George.  So what I would like to do normally is

39

## Proceedings

1   to go up a day early, so I have at least two days equal

2   to the two days that I have to travel.  But beyond that,

3   on the 6th, there's the Brooklyn Law School commencement

4   but that's not a whole day affair.  And if need be, I

5   mean that's just a couple of hours that I have to slip

6   away for.  I'm on the board of trustees and I was

7   instrumental in getting the commencement speaker.  So I

8   would at least like to be there for the commencement

9   address.  But that's not -- it's actually -- my

10  recollection is that it may even be in the morning.  So

11  that would be even better.  This way there won't be any

12  disruption.  My recollection is that the commencement is

13  in the morning which means we won't have to disrupt the

14  day.  I will simply tell the jury to come in at a

15  particular time and I won't need to have a two hour break

16  or a two and a half hour break.  That's up at Lincoln

17  Center is where the commencement is.  So if it's in the

18  morning, which is what my recollection is, it would make

19  it simpler.

20          MR. SPECTOR:  Okay.  And we normally start at

21  10 a.m.; is that right?

22          THE COURT:  I don't know if there's a normal

23  starting time.

24          THE CLERK:  We should try.

25          THE COURT:  We'll try.  I generally prefer to

40

**Proceedings**

1  work late as opposed to starting early.

2          MR. SPECTOR:  And is there a time we generally

3  end by?

4          THE CLERK:  Just figure 6:30.

5          THE COURT:  Well, look at this way, I don't run

6  the court by the clock.  If I think I can finish a

7  witness by working an extra half hour, I will.  It's sort

8  of a rule of thumb.  Even in the summer -- in the winter,

9  I'm concerned about the jurors walking out here late

10  because as you know, the place is deserted.  In the

11  summer, I don't have that concern.

12          On the other hand, I don't like to keep them

13  too late because they have to commute and I don't -- some

14  of them have distances.  I don't want them to get home at

15  9 o'clock but my rule of thumb is I don't run the trial

16  by the clock and as I say, if I feel I can make progress

17  by working a half later or forty-five minutes later, even

18  an hour later, I'll do it.

19          A lot of times, people tell me, you know, we

20  don't have any more witnesses.  We move too fast.  And

21  there's a general tendency to over estimate how long

22  things will take.

23          THE CLERK:  Plan to have enough witnesses for 7

24  o'clock.

25          MR. SPECTOR:  Thank you, Judge.

Transcription Plus II, Inc.

41

## Proceedings

1          MS. JAGER:  Thank you, Judge.

2          MR. SPECTOR:  One other -- I'm sorry, just one

3   other matter.  I think we'd request when we see the jury

4   on Monday that you instruct --

5          THE COURT:  When we see the jury Monday?

6          MR. SPECTOR:  Next Monday.

7          MR. SCHNEIDER:  A week from Monday.

8          THE COURT:  Yes.

9          MR. SPECTOR:  Instruct them specifically about

10  not posting anything on Facebook or any other kind of

11  social networking site about the trial.  Several jurors

12  said they're on Facebook.  It seems commonsensical but I

13  think it's appropriate just to reiterate that.

14         THE COURT:  Did the magistrate tell them that,

15  too?

16         MR. SPECTOR:  She didn't say that explicitly.

17  She told them not to do any research or to --

18         THE COURT:  Write out what you want me to tell

19  them and I'll include it in my opening instructions to

20  the jury.

21         MR. SPECTOR:  Thank you, Judge.

22         MS. CESARE:  Thank you, Judge.

23         MR. SPECTOR:  Thank you, Judge.

24         THE CLERK:  See you on the 23rd, counsel, at 10

25  a.m.

42

## Proceedings

1          MR. SPECTOR:  Thank you.

2          THE CLERK:  So we can get everything set up and

3   ready to rock and roll.

4          MR. SPECTOR:  Thank you.

5          MS. CESARE:  Thank you.

6               (Matter concluded)

7                    -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

43

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **May**, 2011.

Linda Ferrara
Transcription Plus II, Inc.