UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>FOR PUBLICATION</u>

Joseph Yannai,

Petitioner,

– against –

The United States of America

Respondent.

<u>MEMORANDUM & ORDER</u>

10-CR-594/17-CV-1738 (ERK)

KORMAN, *J.*:

## BACKGROUND[1]

On August 3, 2010, Petitioner Joseph Yannai was arrested for using the Internet to mislead and lure young women to work as "assistants" at his New York home. Upon their arrival at his home, Yannai restricted their contact with the outside world and abused them sexually. When law enforcement arrived to arrest him, he overdosed on benzodiazepine, later admitting that he had attempted suicide to avoid jail. Hr'g Tr. 5, 39-43, ECF No. 19.

Yannai was represented by the Federal Defenders of New York, namely Michael K. Schneider, Heidi C. Cesare, and Ben Silverman. Trial began on May 23, 2011. The evidence established that, between approximately 2003 and 2009, Yannai induced young women to travel to work as "personal assistants" at his home in Pound Ridge, New York. Yannai's home—in a rural area far from public transportation—made it difficult for his victims to escape. Trial Tr. 155, 322, 597, ECF Nos. 149-156. Yannai targeted young women from abroad, posing as a former female

---

[1] Because the United States has comprehensively and fairly laid out the facts of this case in its brief, the background section here draws heavily from it. I refer interested readers to the United States' brief, ECF No. 277, and the opinion of the Court of Appeals affirming conviction, *United States v. Yannai*, 791 F.3d 226, 230-38 (2d Cir. 2015), for a more thorough summary.

employee of his to lure women into agreeing to work for him. *Id.* at 58-60, 132-33, 268-69, 440, 570. He promised the victims a "green card" visa, a $20,000 bonus, and payment for college in the United States—none of which any victim ever received. *Id.* at 55, 59-60, 65, 70, 131-33, 135, 149, 183, 272-76, 426, 442-45, 576-77, 587-89.

Part of Yannai's scheme was his instruction to his victims to lie to immigration authorities upon arriving in the United States, saying that their trips were for tourism rather than work. *Id.* at 70-72, 143-44, 289, 451-53, 586-88. By ensuring that his victims entered the United States illegally, he was able to threaten them with deportation if they refused to yield to his demands. *Id.* at 56-59, 137, 152, 178, 449, 460, 593. Yannai encouraged his victims to arrive with no money, phone, credit card, or return ticket home, assuring them that he would pay for everything. *Id.* at 55, 135, 273, 296, 434-35, 445, 573-74, 592, 598. When the victims arrived, he lied to prevent his victims from contacting the outside world, falsely claiming that any emails would cause computer viruses. *Id.* at 76-77, 166, 280. Once they were in his home, Yannai subjected his victims to physical, sexual, and psychological abuse. *Id.* at 539, 605-08. This abuse included forcing a victim to perform oral sex on him, and forcibly digitally penetrating another victim. *Id*.

After summations concluded on May 26, 2011, the parties returned to court for the jury charge and deliberations on June 1. That morning, the defense reported that Yannai had collapsed while driving to court. *Id.* at 1165. I initially declined to proceed in his absence. *Id.* at 1170. Medical staff at the hospital where Yannai was being treated reported that he remained unconscious and that his condition appeared to be caused by a drug overdose. *Id.* at 1177-78. I inquired into the circumstances of his collapse, questioning the emergency room treating physicians on the record. *Id.* at 1185-90. After speaking with the doctors, I concluded that he had voluntarily absented himself and proceeded in his absence. *Id.* at 1191-93. At the request of Yannai's attorneys, I informed the jury that he was hospitalized before giving the jury charge. *Id.* at 1207.

After approximately three days in his overdose-induced coma, Yannai regained consciousness. His attorneys reported that while he acknowledged taking Valium the night before the incident, he denied intentionally overdosing, and they therefore moved for a mistrial. *Id.* at 1345-47. I denied the motion. *Id.* at 1347. Shortly thereafter, the jury reached a verdict and, with Yannai listening via speakerphone, the jury convicted him on all counts. *Id.* 1350-59.

Following his conviction, Yannai requested reassignment of counsel, and I appointed Georgia Hinde and Neil Checkman. *See* CJA 20, ECF Nos. 170, 186. Yannai moved for a new trial on the sole ground that jury charging and deliberation should not have proceeded in his absence. I conducted a full evidentiary hearing on his motion, at which a court-appointed toxicologist testified. Even though Yannai was in the best position to provide important details of the second overdose, he declined to do so. Hr'g Tr. 5-6, 10, ECF No. 209. Instead, he submitted an affidavit that provided only a vague and incomplete account of the second overdose, claiming that the overdose was accidental. Yannai Decl. at 128-33, *United States v. Yannai*, 791 F.3d 226, (2d Cir. 2014) (No. 13-4466), ECF No. 25-3. I concluded that the second overdose had been voluntary and deliberate, and reaffirmed my prior finding that Yannai had purposefully absented himself from the trial. Sent. Hr'g Tr. 28-29, ECF No. 242. Moreover, because the issues that arose during the jury charge and deliberations were entirely legal and Yannai could not have contributed to their resolution, his presence would have made no difference. Accordingly, I rejected his far-fetched claim that his presence post-closing would have affected the trial's outcome and held that, even if proceeding in his absence was error, it was entirely harmless. *Id.* at 13-17. I ultimately imposed a below-Guidelines sentence of 132 months' imprisonment. *Id.* at 47.

Yannai appealed. After explaining that his absence was properly deemed "voluntary and deliberate," the Second Circuit ruled that there existed "no error of law in the district court's refusal to adjourn the trial for more than one day or in its denial of Yannai's motion for a mistrial." *Yannai*,

791 F.3d at 243-44. It found no "abuse of discretion in the [district court's] conclusion that the interest of justice did not warrant a new trial." *Id.* at 245. Finding all of Yannai's arguments meritless, it affirmed. *Id.* at 247. Yannai filed a petition for a writ of certiorari, but the Supreme Court denied his petition on March 28, 2016. *Yannai v. United States*, 136 S. Ct. 1503 (2016).

On March 27, 2017—just one day before his window to file a habeas petition closed—Yannai filed the instant petition under 28 U.S.C. § 2255. On July 31, 2017, I directed trial counsel, Michael Schneider, to file an affidavit responding to the issues raised in the petition. Schneider submitted an affirmation on September 7, 2017. Schneider Aff., ECF No. 276.

Yannai's petition raises two claims: ineffective assistance of counsel and error in denying his motion for a mistrial. As to his ineffective assistance claim, Yannai identifies myriad "failures" committed by his pre-trial, trial, sentencing, and appellate counsel. None of Yannai's claims have merit, but each will be addressed below.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Yannai's ineffective assistance claim is governed by the familiar two-part test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on his claim, Yannai must first establish that "counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Generally, tactical or strategic decisions made by counsel cannot serve as the basis for a deficient performance claim. *See Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005); *see also Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). Second, he must demonstrate "that the deficient performance prejudiced the defense" by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been

different." *Strickland*, 466 U.S. at 687, 694. To prevail on an ineffective assistance claim, Yannai must make a sufficient showing on both prongs. *See id.* at 697. Conversely, a failure to prove either element dooms his claim. Thus, I "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.*

Moreover, Yannai must "affirmatively prove prejudice" by showing that the purported errors "actually had an adverse effect on the defense." *Id.* at 693. Speculative, conclusory, or self-serving allegations are insufficient. *See LeMarco v. United States*, ___ F. Supp. 3d ___, 2018 WL 4863593, at *9 (E.D.N.Y. 2018) (citing *Blumenberg v. United States*, No. 05 Civ. 9416 (JGK), 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009)); *Pena v. United States*, 192 F. Supp. 3d 483, 491 (S.D.N.Y. 2016) (citing *Rosario v. Bennett*, No. 01 Civ. 7142, 2002 WL 31852827, at *33 (S.D.N.Y. Dec. 20, 2002) (collecting cases)).

*A. Counsel's Opening Statement at Trial*

Yannai argues that his counsel, Heidi Cesare, disregarded his instructions related to her opening statement at trial. Specifically, Yannai states that he "forbade her to give an opening statement" arguing that, while Yannai's conduct was "immoral" and he was a "dirty old man," he did not commit a crime. Pet. Br. 17. Contrary to Yannai's assertions, defense counsel never directed any epithets at Yannai or his conduct. She never actually called Yannai a "dirty old man," let alone admitted that Yannai was guilty of the crimes charged. Counsel told the jury that they would "hear names that most people would call a dirty old man," but urged the jurors to put aside their own compunctions and focus on the law. Trial Tr. 25.

"[T]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *cf. Bell v. Cone*, 535 U.S. 685, 701-02 (2002) (decision to not give summation is a tactical decision

and not necessarily incompetent). If the decision as to whether an opening statement should be given at all is a matter of strategy, then the contents of that opening statement—within certain limits—may also be decided by trial counsel. *See Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 313-314 (W.D.N.Y. 2011) (citing *United States v. Kortright*, 205 F.3d 1326 (2d Cir. 2000)). Moreover, defense counsel did not merely note that the prosecution would paint Yannai as a "dirty old man" and then sit down. Both during her opening and throughout the trial, counsel reminded the jury that "this courtroom . . . is a court of law. It's not a court of moral opinion." Trial Tr. 24. Counsel's opening reasonably addressed the prosecutor's attempts to "tell[] [the jury] what a bad man Joseph Yannai is" and promptly refocused the jury's attention on the "important legal issues in this case"—Yannai's intent and actual conduct. *Id.* at 23-24. The same theme carried through into closing arguments—which Yannai does not contend were ineffective—when counsel explained that "you're not here to decide whether Mr. Yannai's a jerk or not," "an egotistical over-the-top womanizer," or "whether his home was a hostile sexist work environment . . . . You're here to decide simply whether the prosecution has proven beyond a reasonable doubt that Joseph Yannai committed the crimes they accused him of." Trial Tr. 1084-85. Such arguments turned on a tactical decision of how best to focus the jury on the issues that presented the best chance of acquittal. The Federal Defenders of New York regularly make these kinds of challenging decisions and consistently do extraordinary work despite the numerous obstacles they face. Yannai's attorneys were no exception to the Federal Defenders' usual high caliber performance, and their actions here were certainly not "deficient."

Nor does Yannai point to any prejudice that flowed from this purportedly ineffective tactic. Yannai does not explain precisely how this opening impacted the outcome of the trial nor does he offer an alternative opening that would have been more effective, particularly given the uncontroverted and overwhelming evidence offered by the prosecution. Yannai makes no attempt

to explain what effect this opening might have had on the jury's thinking or why he found it unpalatable, especially given the relatively anodyne nature of Cesare's opening statement. *See* Pet. Br. 17-18; *see also* Trial Tr. 23-41. He merely states that he "told Cesare that he did not agree with this line of defense." Pet. Br. 17. This is plainly insufficient to establish any prejudice, let alone affirmatively prove it.

Nevertheless, in *McCoy v. Louisiana*, 138 S. Ct. 1500, 1510-11 (2018), the Supreme Court noted that some errors implicate "a client's autonomy, not counsel's competence," so the traditional *Strickland* analysis does not apply. Putting aside the question of whether *McCoy* enunciated a new rule under *Teague v. Lane*, 489 U.S. 288 (1989), precluding its application on collateral review, *McCoy* held that counsel cannot concede a defendant's guilt over defendant's objections because doing so would "allow[] counsel to usurp control of an issue within [the defendant's] sole prerogative." 138 S. Ct. at 1511. *McCoy* presented materially different facts and does not govern here. The types of errors that implicate a client's autonomy must be "structural" errors "in the trial process itself," such as impinging on "the right to counsel of choice" or "a judge's failure to tell the jury that it may not convict unless it finds the defendant's guilt beyond a reasonable doubt." *Id.* (citations and quotation marks omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.").

While the decision to contest guilt is squarely within the client's control, *see McCoy*, 138 S. Ct. at 1511, the question of *how* to present an argument of innocence is not, and *McCoy* cannot be read so broadly. As noted above, Yannai appears to be uncomfortable with counsel's statement that the jury would "hear names that most people would call a dirty old man." Trial Tr. 25. But counsel never actually called Yannai a "dirty old man." Instead, counsel strenuously argued that

Yannai was not guilty, even if, "from [the juror's] point of view [the conduct] is immoral or offensive." *Id.* at 23. Counsel's decision did not implicate Yannai's fundamental rights, and the strategic decision of how best to formulate and present an opening statement was not ineffective.

### B. Failure to Call Yannai to Testify on His Own Behalf

Yannai asserts that "he should have testified" because his testimony "was his only chance to win the case." Pet. Br. 19. Yannai claims that, although he informed his attorneys of his desire to testify, "they did not inform the judge of Yannai's desire to testify and the judge continued the trial in his absence" after "Yannai was hospitalized." *Id.* at 19-20.

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, the ultimate decision regarding whether to testify belongs to the defendant." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997) (citations omitted). Because the decision to testify is personal, "the trial judge need not stop a defendant called by defense counsel to the stand and explain the right not to testify," nor must the judge "intervene when counsel announces that the defendant rests and the defendant has not testified." *Id.* at 79. Rather, the duty rests with counsel to "inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Id.* Consequently, "any claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two-prong test established in *Strickland*." *Id.*

Yannai's statement in this post-conviction proceeding that counsel "did not inform the judge of Yannai's desire to testify" is belied by the record. Yannai claims he was unable to testify

at trial because he was hospitalized the day after he told his lawyers that he wished to testify. Pet. Br. 19-20. But Yannai was not hospitalized until June 1, 2011, five days after the defense rested on May 26. Thus, Yannai's opportunity to testify had passed well before he purportedly expressed his desire to counsel. Moreover, Yannai's counsel discussed the merits of testifying with him "before the trial began." Schneider Aff. ¶ 11. Yannai's counsel noted that he "always opposed . . . him testifying" because he "believe[d] that [Yannai] could not withstand cross-examination without making some untoward or sexist comment that would doom his case." *Id.*

While I cannot assume that Yannai waived his right to testify "solely from [his] silence at trial," I may and do credit counsel's description of events over Yannai's "highly self-serving" assertions. *Chang v. United States*, 250 F.3d 79, 84, 86 (2d Cir. 2001). Separate and apart from the fact that his entire narrative is internally inconsistent and contradicted by the record, counsel Michael Schneider swore in his affidavit that he "always explain[s] to a client that it is his or her choice to testify and that [counsel] can only give [] advice—the final decision is theirs," and that he had a conversation with Yannai about his right to testify before trial began. Schneider Aff. ¶ 11. Because counsel advised Yannai of his right to testify and solely advised against doing so—without usurping the defendant's choice as to whether he ultimately would testify—counsel satisfied his obligations under *Strickland*. *See United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) ("[I]f defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary."). Yannai fails to

demonstrate that he actually expressed his desire to testify or that counsel failed to inform him of his right to testify. Thus, counsel's performance was not deficient.

Moreover, even if counsel had somehow pressured Yannai into not testifying, Yannai cannot demonstrate that he suffered any prejudice as a result. In *Brown*, the petitioner identified specific facts that he would have testified to "had he been allowed to take the stand." 124 F.3d at 80. These included that he had a "real and well founded fear of the [murder victim]," that the victim "had threatened defendant's life," and that the victim "had a very violent temper." *Id.* Despite these specific statements, the Second Circuit concluded that "there is no reasonable probability that the verdict would have been different" because, even if a jury credited the proposed testimony, the petitioner would have been unable to establish that he was acting in self-defense as none of his testimony demonstrated that he could not have retreated instead of fighting back, as required by New York law. *Id.* at 81. Here, Yannai does not even suggest what his testimony might have entailed, let alone that it would have changed the outcome of his case. And even if he had provided a summary of his proposed testimony, it is unlikely that a jury would have credited it because it probably would have conflicted with the statements of other witnesses and "added little weight to [the] defense." *Rega v. United States*, 263 F.3d 18, 22-26 (2d Cir. 2001). Moreover, Yannai's hypothetical testimony would have opened the door to the introduction of damaging evidence or harsh cross-examination, further diminishing any impact it might have had on the trial's outcome. *See id.* Thus, Yannai has not demonstrated any prejudice that flowed from his failure to testify.

There remains, however, one last consideration before fully putting this argument to rest: whether Yannai's right to testify is a "structural" right not amenable to *Strickland* or harmless error analysis. *See McCoy*, 138 S. Ct. at 1510-11. In determining whether a particular error is structural, "[t]here appear to be at least three broad rationales": (1) "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," (2) "if

the effects of the error are simply too hard to measure," and (3) "if the error always results in fundamental unfairness." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017).

A defendant's right to testify falls within the first of these three categories. Like the right to represent oneself, it is "based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *McCoy*, 138 S. Ct. at 1509 (citing *Weaver*, 137 S. Ct. at 1908). The right "implicates the [defendant's] autonomy and freedom." *Williams v. United States*, No. 3:15-CV-01301 (VLB), 2018 WL 4656231, at *5 (D. Conn. Sept. 27, 2018). It is "[e]ven more fundamental to a personal defense than the right of self-representation" because "an accused's right to present his own version of events in his own words" is rooted in the Fifth, Sixth, and Fourteenth Amendments. *Rock*, 483 U.S. at 51-53. While the contours of a legal defense as presented in an opening statement remain firmly within the province of counsel, the defendant's right to convey his own narrative to the jury that will decide his fate protects the defendant's autonomy and ensures that a defendant will not feel unduly silenced by his (possibly court-appointed) attorney. *See id.*; *see also Harris v. New York*, 401 U.S. 222, 230 (1971) ("The choice of whether to testify in one's own defense must therefore be 'unfettered' . . . ." (quoting *Griffin v. California*, 380 U.S. 609 (1965))). In sum, the right to testify falls within the first category of structural rights laid out in *Weaver* because it "is not designed to protect the defendant from erroneous conviction but instead protects some other interest,"—namely, the defendant's right to choose how best to protect his liberty. *Weaver*, 137 S. Ct. at 1908. The decision to testify, then, is both a personal right, *see Brown*, 124 F.3d at 77-78, and a fundamental right.

The Supreme Court has noted, however, that courts should employ "a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel." *Weaver*, 137 S. Ct. at 1912. On direct review, prejudice resulting from a structural error may be presumed and "a new trial will be granted as a

matter of right." But when raised as part of an ineffective assistance claim on collateral review, "prejudice is not shown automatically." *Id.* at 1910-13. These divergent outcomes depending on when a claim of structural error is raised are a function of "the high 'systemic costs' of using habeas to remedy trial-level errors." *Lawson v. Smith*, No. 6:15-cv-038-JMH-CJS, 2018 WL 3594970, at *13 (E.D. Ky. July 26, 2018) (quoting *Weaver*, 137 S. Ct. at 1912). More specifically, because "the finality interest is more at risk" given that "more time will have elapsed" between trial and collateral review as compared to trial and direct review, a higher standard applies in the former case. *Weaver*, 137 S. Ct. at 1912.

Thus, even though Yannai's right to testify at his trial is a fundamental right and any denial of that right may have been "structural error," he is still required to show prejudice here. Whereas *McCoy* was decided on direct appeal, allowing the Supreme Court to bypass the prejudice analysis and order a new trial, *see McCoy*, 138 S. Ct. at 1507, 1512, this case comes before me on a petition for writ of habeas corpus, requiring application of *Strickland* and its attendant consideration of prejudice, just as the Second Circuit did when presented with a similar claim and a similar procedural posture in *Brown v. Artuz*, 124 F.3d at 80-81. In this case, as in *Brown*, the petitioner has failed to demonstrate prejudice flowing from his failure to testify. *See id*, at 74, 80-81. Accordingly, for the reasons stated above, Yannai's ineffective assistance claim must be denied.

## C.  Other Ineffective Assistance Claims

Yannai broadly criticizes his attorneys for failing to communicate with him. Rather than address this amorphous allegation, I will examine the specific tasks about which he claims his attorneys failed to communicate.

### i.  Conducting Pre-Trial Investigations

Yannai cursorily states that "[c]ounsels failed in . . . [i]nvestigati[ng] . . . whether [witnesses] were promised a green card and money for their testimonies . . . ; [i]nvestigati[ng] . . .

ease of access to leave house premises by these women," and failing to follow up on statements by a witness indicating that she would receive money from the sale of Yannai's house after conviction. Pet. Br. 20. Nevertheless, Yannai admits that counsel engaged a private detective to investigate whether some of Yannai's victims would testify on his behalf or testify to potential prosecutorial misconduct. *Id.* at 21. Yannai's conclusory statement that "none . . . were found" is contradicted by his attorney's affidavit, which states that counsel "interview[ed] several of the complainants . . . and . . . subpoenaed at least one . . . complainant prior to trial." Schneider Aff. ¶ 13. However, counsel "decided that the testimony of these complaining witnesses would not help Mr. Yannai's case." *Id.* Moreover, counsel cross-examined "the complaining witnesses called by the government . . . about financial or other benefits [they] expected to receive after testifying." *Id.*; *see also* Trial Tr. 102-03, 120-21, 235-36, 560-63, 754-63, 787-88.

While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Strickland*, 466 U.S. at 691, counsel need not "investigate comprehensively every lead or possible defense." *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005). Counsel's decision to cross-examine witnesses about benefits they might have received in exchange for testifying rendered unnecessary independent investigation as to whether they were promised anything by the government. Each witness admitted to the benefits provided to them by the government before the jury. *See, e.g.*, Trial Tr. 102-03 (witness admitting that she received immunity from the Government and that the Government provided her with an attorney); 235-36 (same); 562-63 (witness admitting that she expected to receive money if the defendant is convicted); 762-63 (asking witness regarding same). Yannai offers no explanation of why additional investigation would have yielded different evidence.

Likewise, counsel repeatedly cross-examined the complaining witnesses about opportunities to leave Yannai's house and elicited testimony that the witnesses could and did leave

Yannai's house on multiple occasions. *See, e.g.*, Trial Tr. 225-26, 417-18, 699. Thus, Yannai has "failed to establish that counsel's performance was deficient" because his "bald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably." *Boyd v. Hawk*, 965 F. Supp. 443, 451-52 (S.D.N.Y. 1997) (quoting *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995)). Moreover, Yannai does not explain how these or any other purported investigatory failures prejudiced him.

### ii. Pre-Trial Discovery

In broad terms, Yannai contends that he "was unable to obtain the discovery that he needed to be fully informed." Pet. Br. 25. He claims that, "[h]ad he been given the discovery . . . there is a reasonable probability that he would have opted to plead guilty." This argument is baseless. Yannai does not identify what "discovery" he did not receive. Yannai's counsel made numerous discovery requests and received discovery from the Government throughout the pre-trial period. *See, e.g.*, ECF Nos. 12, 33, 52, 63, 74, 77, 90, 110, 118, 124. That material "was available to Mr. Yannai at any time." Schneider Aff. ¶ 15. Yannai's statements are insufficiently detailed to support his assertion that he might have pleaded guilty if given access to this material, so he fails to make a sufficient showing of prejudice. *See Roberts v. Scully*, 875 F. Supp. 182, 195 (S.D.N.Y. 1995) (denying ineffective assistance claim where "petitioner does not suggest what materials, if any, were improperly withheld by the State"); *see also Thomas v. Lord*, 396 F. Supp. 2d 327, 336 (E.D.N.Y. 2005) (denying ineffective assistance claim where "review of the case file reveals numerous motions filed by the Petitioner's counsel").

### iii. Obtaining a Jury Selection Specialist

Yannai alleges that "[a] couple of weeks before the beginning of the trial, [he] approached his defense team and asked them to obtain a jury-selection specialist." Pet. Br. 16. Defense counsel purportedly "assured Yannai that they had the budget to hire one" but ultimately "decided not to

hire one as one of the attorneys, Cesare, was experienced in selecting a jury and that she was as good as a professional jury-selection specialist." *Id.* Yannai now claims that this purported change of heart as to hiring a jury selection specialist constituted ineffective assistance of counsel.

This claim is meritless. Not only does Yannai's counsel swear that he "never informed Mr. Yannai that the Federal Defenders would hire a jury selection specialist," but that in "twenty-five years as a public defender, I have never hired a jury selection specialist." Schneider Aff. ¶ 5. In my own nearly thirty-three years on the bench and ten years in the U.S. Attorney's Office, I have only ever seen a jury selection specialist hired once in a criminal case, either by public or private defense counsel. Not hiring a jury selection specialist is the norm; hiring one is extraordinary. *See Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR. 1509, 2007 WL 2438422, at *10 (S.D.N.Y. Aug. 24, 2007) ("[I]t is a rare defendant that is able to fund the conduct of a mock trial or hire a jury consultant. It does not constitute ineffective assistance of counsel to proceed to trial without having undertaken such efforts."). The Federal Defenders, able attorneys that they are, made a perfectly reasonable decision to rely on their own wealth of experience in lieu of bringing in an outside consultant. Accordingly, counsel's decision was not only objectively reasonable, but accorded with standards of professional practice.

Moreover, that decision was not prejudicial. Yannai does not dispute that Cesare "was as good as a professional jury-selection specialist." *See* Pet. Br. 16. Nor does he identify decisions that would have been made differently or outcomes that would have been affected by the assistance of a specialist. *Cf. Schreter v. Artuz*, 225 F. Supp. 2d 249, 257 (E.D.N.Y. 2002) (ineffective assistance claim denied because petitioner failed to demonstrate how alternate questioning of jurors during voir dire would have affected trial outcome).

### iv. Informing Yannai of the Consequences of a Guilty Plea

Yannai also asserts that his lawyers "expressly failed to correctly familiarize [themselves] with the relevant facts of the case, case law, applicable Guidelines and potential consequences of a conviction." Pet. Br. 24. Had they done so—and "properly informed" Yannai "of the sentencing exposure he faced"—Yannai claims, "there is a reasonable probability that he would have opted to plead to the Indictment with or without a plea agreement." *Id.* Yannai's vague and unsubstantiated assertions are flawed in three ways.

First, counsel recalls that the prosecutor "stated that he would pursue a significant jail sentence if Mr. Yannai pleaded guilty . . . [of] at least five years." Schneider Aff. ¶ 14 (quotation marks omitted). Upon hearing that proposal, Yannai "made it clear he was uninterested in a guilty plea if it involved . . . a prison term in the range of five years." *Id.* Yannai fails to explain how any other "advice or information" would have altered his decision to reject this offer.

Second, Yannai's post-hoc, self-serving statement that he would have "plead [sic] to the Indictment with or without a plea agreement," had he been "properly informed" is nonsense. Pet. Br. 24. Yannai could have pleaded to the indictment at any time, even without a plea agreement, but never did so.

Finally, Yannai fails to identify any "'objective evidence,'" which is necessary "to support a prejudice finding." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010) (quoting *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003)). Objective evidence may include proof of "a significant sentencing disparity" between the actual sentence received and the hypothetical sentence he would have received if he had pleaded guilty. *Pham*, 317 F.3d at 182. Yannai offers no such evidence, nor could he—the prosecutors never offered him a formal plea deal, let alone one with a lower sentence than he actually received. *See* Gov't Br. 29, ECF No. 277.

v.    <u>Conferring with Yannai Regarding Cross-Examination</u>

Yannai further complains that "[n]ot even once did any member of the defense team approach [him] at the end of the cross" to ask Yannai if there were any additional questions he would like to have asked. Pet. Br. 18. While counsel noted in his affidavit that he "cannot recall whether [he] asked Mr. Yannai for his input before ending [his] cross examinations," he also stated that "it would be unusual for [him] not to do so." Schneider Aff. ¶ 7. My own experience presiding over decades of trials accords with Schneider's sworn statement. The Federal Defenders of New York invariably pause at the end of a cross-examination to confer with their clients. That pause may not always appear on the record—sometimes defense counsel asks for my indulgence before speaking with their client, sometimes they do not—but the conversation occurs even when not apparent from a transcript, and it occurred during Yannai's trial.

But even if counsel did not confer with Yannai about additional questions on cross-examination, that decision would not constitute ineffective assistance. Decisions related to cross-examination are quintessentially "strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (citation and quotation marks omitted); *see also United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer . . . ."). Moreover, Yannai, yet again, has failed to establish any prejudice flowing from counsel's decision to not ask the specific questions offered by Yannai. He offers no explanation of how his proposed questions would have enhanced his defense or affected the outcome of the trial, particularly as many of his proposed questions were asked in a substantially similar form at trial. *Compare* Yannai Decl., ECF No. 279-1, at 3, *with, e.g.*, Trial Tr. 209, 234, 352-54, 528.

vi.    <u>Calling Additional Witnesses</u>

Yannai claims that he "instructed his attorneys to subpoena his lawyer from the state trial" so that he could testify to "the dirty, although legal, trick that [the state prosecutor] tried to make Yannai fall for." Pet. Br. 19. Specifically, Yannai claims that the state prosecutor "was negotiating a plea deal with Yannai" and intended "to make Yannai admit his 'guilt'" before "turn[ing] the case over the Feds." *Id.* Yannai also faults his attorneys for failing to call Gisele Lunkes, who "was in the house at the same time as [other victims]" and "could have raised question [sic] of credibility of the others had Lunkes been questioned" because, Yannai asserts, she lied in the past. *Id.* at 20.

Contrary to Yannai's arguments, "the tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *see also Nersesian*, 824 F.2d at 1321 ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision . . . ."). As to calling Yannai's attorney from a prior state prosecution, Yannai's defense attorney in the federal proceeding noted that he did "not recall Mr. Yannai asking to call the attorney" and, "even had Mr. Yannai asked [him] to," he would not have done so because he did "not think that evidence of [] prosecutorial misconduct would have been admissible." Schneider Aff. ¶ 9. And, as to Lunkes, "[t]he defense had subpoenaed Gisele Lunkes to appear at trial. However, after having defense team members speak with her," she was not called because counsel "was unsure what Ms. Lunkes would say if called" and was concerned that she "would testify that she engaged in oral sex with Mr. Yannai regularly and believed that this fact would negatively affect the jury." *Id.* at ¶ 10. Where counsel is concerned that calling a witness may lead to testimony that would negatively affect the jury's perception of a defendant's involvement in a crime, counsel's decision to not call a specific witness does not fall below an objective standard of reasonableness. *See United States v. Romero*, 54 F.3d

56, 59-61 (2d Cir. 1995) (holding that a tactical decision not to call a witness to avoid damaging cross examination does not fall below "an objective standard of reasonableness"). Moreover, Yannai fails to explain how the failure to call these two witnesses—one of whom likely would have provided only inadmissible testimony and the other one of whom may have offered testimony that would have hurt Yannai before the jury—amounts to prejudice.

       vii.     Sentencing Counsel's Failure to Challenge the Sentence as Substantively Unreasonable

Yannai's two-sentence argument regarding counsel's failings is wholly inadequate to demonstrate either deficient performance or prejudice. *See* Pet. Br. 29. Moreover, Yannai's assertion that his "attorney stood mute like a potted plant and failed to argue for mitigation of Yannai's sentence or for any reduction" is simply false. *Id.* Yannai's sentencing counsel objected to the Guidelines calculation and I agreed that "there's a degree of double-counting" in imposing two separate sentence enhancements for the same underlying conduct, leading to a lowering of Yannai's Guidelines range. *See* Sent. Hr'g Tr. 30-31. Counsel also forcefully argued for mitigation based on Yannai's age, deteriorating health, and the nature of his crimes. *See id.* at 34-37. Indeed, I imposed a 132-month sentence, nearly two and a half times shorter than the 292 to 365 months sought by the United States. Gov't Sent. Mem. 2, ECF No. 221; Sent. Hr'g Tr. 47. In short, Yannai's argument is baseless, and sentencing counsel provided effective assistance.

       viii.    Appellate Counsel's Selection of Claims for Appeal

Finally, Yannai contends that appellate counsel failed to raise "stronger meritorious issues." Pet. Br. 29-30. Yannai does not identify a single issue that counsel should have raised, let alone that these hypothetical alternatives were more meritorious than the arguments advanced on appeal. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious

issues while pursuing issues that were clearly and significantly weaker."). Thus, Yannai has failed to demonstrate ineffective assistance of appellate counsel.

## II. Mistrial

Yannai's arguments regarding mistrial warrant little discussion. After an inapposite citation to *Faretta v. California*, 422 U.S. 806 (1975), which discusses the right of a defendant to represent himself, Yannai merely states he submitted a letter "requesting that he be present at all conferences" and that I "used 'harmless error' as justification in conducting part of Yannai's trial in his absence while he was unconscious in a hospital." Pet. Br. 28. Putting aside the fact that this letter was submitted over a year after the close of trial and that, as Yannai himself notes in his brief, mistrial motions are subject to harmless error review, the Second Circuit has already held that the trial properly continued while Yannai was hospitalized. *United States v. Yannai*, 791 F.3d 226 (2d Cir. 2015). The "mandate rule bars relitigation of issues already decided on direct appeal." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). Thus, Yannai's claim is barred.

## III.     Hearing on the Petition

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). While "off-the-record interactions with . . . trial counsel" indicate that "summary dismissal" may be inappropriate, I am not required to hold a full hearing solely because a petitioner alleges such interactions. *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). Where "the record [is] supplemented by a detailed affidavit from trial counsel credibly describing the circumstances concerning" the petitioner's claim for relief, summary dismissal of the petition may be warranted. *Id.* at 85. Moreover, where the evidence submitted by a petitioner is "self-serving and improbable," a hearing is not necessary. *Id.* at 86; *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir.

2009) ("[W]hen the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner.").

*Chang* governs this case. Even assuming Yannai's claim "is not so clearly bereft of merit as to be subject to dismissal on its face" because it involves "off-the-record interactions with his trial counsel," "the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances" surrounding counsel's purported failings. *Chang*, 250 F.3d at 85. "[W]ith that submission[,] the record [is] sufficient to support dismissal" without a hearing. *Id.* Every single claim asserted by Yannai is either directly contradicted by the record or by counsel's credible affidavit. There is no need to "conduct[] a full-blown testimonial hearing," as the record has been sufficiently developed by counsel's affidavit. *Id.* at 86. Conducting a full testimonial hearing based on the threadbare, self-serving, and mendacious allegations put forth in Yannai's petition would lead to "needless expenditure of judicial resources, . . . burden . . . trial counsel and the government, and perhaps . . . encourage[] other prisoners to make similar baseless claims." *Id.* A testimonial hearing "would not offer any reasonable chance of altering [my] view of the facts." *Id.* Thus, a hearing is not necessary.

## CONCLUSION

The petition for relief pursuant to 18 U.S.C. § 2255 is denied. I also decline to issue a certificate of appealability.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
November 6, 2018

Edward R. Korman
United States District Judge